IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LORRAINE SCHEURER, individually and as Administratrix of the Estate of ROBERTO RODRIGUEZ ZAYAS, deceased; SONIA ZAYAS, in her individual capacity as wrongful death beneficiary of ROBERTO RODRIGUEZ ZAYAS, deceased; LORRAINE SCHEURER as next friend and mother of M.Z., a minor in his individual capacity as wrongful death beneficiary of ROBERTO RODRIGUEZ ZAYAS, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHATTANOOGA, TENNESSEE; OFFICER DYLAN JOHNSON; OFFICER LEWIS DAVIS; JOHN CHAMBERS, CHIEF OF POLICE; <br><br> Defendants. | CASE NO.: <br><br> JUDGE: <br><br> (Jury Demand Endorsed Hereon) |

# COMPLAINT

Now come Plaintiffs Lorraine Scheurer, individually and as Administratrix of the Estate of Roberto Rodriguez Zayas, deceased, Sonia Zayas, in her individual capacity as wrongful death beneficiary of Roberto Rodriguez Zayas, deceased, and M.Z., a minor in his individual capacity as wrongful death beneficiary of Roberto Rodriguez Zayas, deceased ("Plaintiffs"), by and through undersigned counsel, and for their Complaint against Defendants, states as follows:

## I. INTRODUCTION

1. This action arises out of the tragic and senseless shooting death of Roberto Rodriguez Zayas ("Decedent Zayas") on December 24, 2024, while experiencing a mental health crisis in Chattanooga, Tennessee.

2. On behalf of Decedent Zayas, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983, for deprivation of Decedent Zayas's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against: (1) Defendant City of Chattanooga, Tennessee ("Defendant City") for its unconstitutional policies, customs and/or practices under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny, and (2) Defendants Dylan Johnson and Lewis Davis, individually and in their respective capacities as Chattanooga Police Officers, for their respective violations of Decedent Zayas's right to be free from the use of excessive force.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of Decedent Zayas.

4. Venue is proper in this Court under 28 U.S.C. §1391, because all incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Tennessee and, upon information and belief, all the Defendants reside in this judicial district.

## III. PARTIES

5. At all times relevant to this action, Plaintiff Lorraine Scheurer was, and is, a resident of the City of Jacksonville, Florida.

6. Plaintiff Lorraine Scheurer was appointed the Administratrix for the Estate of Decedent Zayas on June 24, 2025.

7. Defendant City of Chattanooga, Tennessee, is a municipal corporation located in Hamilton County, State of Tennessee and, at all times relevant to this action, employed Defendant Dylan Johnson and Defendant Lewis Davis as employees within the City of Chattanooga Police Department.

8. Defendant City maintains an active police force by and through its police department, which lists as one of its guiding principles: "To keep you, your family, and our community safe."

9. Defendant Officer Dylan Johnson ("Defendant Johnson") is/was a natural person residing in Hamilton County, Tennessee, and is/was an employee within the City of Chattanooga Police Department.

10. Defendant Officer Lewis Davis ("Defendant Davis") is/was a natural person residing in Hamilton County, Tennessee, and is/was an employee within the City of Chattanooga Police Department.

11. Defendant Chief John Chambers ("Defendant Chief") is/was a natural person residing in Hamilton County, Tennessee, and is/was an employee within the City of Chattanooga Police Department, and the acting Chief of Police and top decision maker and policy maker at the City of Chattanooga regarding the Chattanooga Police Department and all employees thereof.

12. Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Chattanooga, Tennessee and/or the Chattanooga Police Department.

## IV. STATEMENT OF FACTS

13. All preceding paragraphs are incorporated as if fully re-written herein.

3

Case 1:25-cv-00382-TRM-CHS   Document 1   Filed 12/19/25   Page 3 of 14   PageID #: 3

14. In the afternoon of December 24, 2024, Decedent Zayas is present with his sister on or around the 7800 block of East Brainerd Road, in the City of Chattanooga, state of Tennessee.

15. Decedent Zayas, a military veteran with a history of PTSD, begins experiencing an acute mental health crisis, where he states to his sister that he hears voices.

16. Decedent Zayas enters a nearby establishment, Waffle house, located at 7801 East Brainerd Road.

17. While in the Waffle House, Decedent Zayas obtains a steak knife and begins to harm himself with it.

18. The Chattanooga Police Department receives a call saying that Decedent Zayas is having a mental health crisis and is harming himself.

19. Decedent Zayas flees from the Waffle House towards a wooded area behind nearby businesses.

20. At or about the same time, Chattanooga police officers, Defendant Dylan Johnson and Defendant Lewis Davis, follow Decedent Zayas on foot and pursue him into the wooded area.

21. Decedent Zayas continues to harm himself with the steak knife by cutting into his arms and neck.

22. While in the wooded area, Defendant Johnson and/or Defendant Davis order Decedent Zayas to drop the knife.

23. Decedent Zayas stops running and turns towards Defendants Johnson and Davis.

24. Decedent Zayas continues to harm himself with the steak knife.

25. Upon information and belief, the distance between Decedent Zayas and Defendants Johnson and Davis does not decrease.

26. Defendant Johnson and/or Defendant Davis deploy tasers into Decedent Zayas's body.

27. Decedent Zayas continues to harm himself with the steak knife.

28. After they deploy tasers, Defendant Johnson and/or Defendant Davis fire 11 rounds from their firearms into Decedent Zayas's body, killing him.

29. Upon information and belief, when Defendant Johnson and/or Defendant Davis shoot Decedent Zayas, Decedent Zayas does not:

    a. Attempt to harm anyone besides himself;

    b. Make a furtive gesture to indicate he was going to use the knife on Defendants;

    c. Make any verbal threats of harm or serious harm to Defendants;

    d. Fight with or otherwise incite Defendants;

30. Upon information and belief, at the time he shoots, Defendant Johnson and/or Lewis:

    a, Encounter no violent threats from Decedent;

    b. Have time to call for backup and plan a life-preserving strategy to engage Decedent;

    c. Do not call for backup or plan a life-preserving strategy to engage Decedent;

    d. Have time to de-escalate the scene and talk with Decedent;

    e, Makes no effort to de-escalate the scene or talk with Decedent;

31. At all relevant times herein, Defendants Johnson and Davis were acting under color of state law, as an agent of Tennessee, and within the scope of their duties as law enforcement officers of the City of Chattanooga.

32. At all relevant times herein, Defendants Johnson and Davis acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the safety and rights of Decedent Fornash, when they used deadly force against Decedent Zayas.

## V. CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983 - Excessive Force in Violation of the Fourth Amendment
### (Against Defendants Johnson and Davis)

33. All preceding paragraphs are incorporated as if fully re-written herein.

34. This claim is brought pursuant to Title 42 U.S.C. § 1983.

35. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

36. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

37. For decades, the United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution to prohibit a police officer's use of excessive force during the arrest of an unarmed citizen. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 2 (1985). ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

38. While acting under color of state law, Defendants Johnson and Davis deprived Decedent Zayas of his well-established right to be free from excessive force, per the authority cited herein.

39. At all times relevant to this action, Plaintiffs assert that Decedent Zayas had the clearly established constitutional right not to be subjected to excessive force while posing no threat of harm to the Defendants or others.

6

40. In other words, on December 24, 2024, Defendants Johnson and Davis were only permitted to use the amount of force necessary under the circumstances to arrest and/or detain Decedent Zayas.

41. At all times relevant to this matter, Defendants Johnson and Davis were clothed with the authority of the state and misused that authority.

42. In this case, Defendants Johnson and Davis used excessive force when they seized the person of Decedent Zayas, to wit:

   a. Defendants intentionally fired their service weapons at Decedent Zayas and killed him with gunfire while he posed no threat of death or serious bodily harm to Defendants or others;

   b. Defendants fired their service weapon at Decedent Zayas while Decedent Zayas was not gesturing as if he were going to use a deadly weapon on Defendants or others;

   c. Defendants fired their service weapons at Decedent Zayas while Decedent Zayas was having a mental health crisis and harming himself;

43. Defendants used force that was objectively unreasonable.

44. Defendants engaged in the above acts with a callous or reckless disregard for Decedent Zayas's federally protected rights.

45. By reason of the foregoing, used excessive force and killed Decedent Zayas, thereby depriving Decedent Zayas of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth (the right to be secure against unreasonable searches and seizures) and Fourteenth Amendments (each citizen has the right to life and liberty) of the United States Constitution to be free from gratuitous and excessive force. Defendants' conduct manifested deliberate indifference to Decedent Zayas's constitutional rights.

46. As a direct and proximate result of Defendants' conduct, as set forth above, Plaintiffs have been damaged, including but not limited to: Decedent Zayas was shot and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiffs' family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT II
## Municipal Liability pursuant to *Monell*
### (Against Defendant City of Chattanooga, Tennessee and Defendant Chief Chambers)

47. All preceding paragraphs are incorporated as if fully re-written herein.

48. This claim is brought pursuant to Title 42 U.S.C. § 1983.

49. Municipal bodies, such as Defendant City, and/or by and through their top policy makers, such as Defendant Chief Chambers, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their official policies or customs deprives an individual of rights protected by the Constitution. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

50. Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to those policymakers' review and approval; or the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

51. A municipality is liable under § 1983 when its agency's policy or custom, as evident from the allegation set forth above and below, is "closely related" to the ultimate constitutional injury

suffered by Decedent and/or Plaintiffs, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

### Unwritten Policy or Custom

52. Defendant City retains an armed police force, the Chattanooga Police Department, with the power to arrest citizens.

53. Defendant Chief Chambers oversees the Chattanooga Police Department, and he acts as the top policymaker and supervisor for the Chattanooga Police Department.

54. Defendant Chief Chambers is responsible for adopting, implementing, promulgating, and enforcing the policies, customs, and practices of the Chattanooga Police Department as applicable to the officers under his command, and his decisions and acts can be fairly attributed to those of the Chattanooga Police Department and/or the City of Chattanooga itself.

55. Defendant Chief Chambers is ultimately responsible for the assignment of personnel for training purposes as well as having the final say as to what training does or does not occur for officers at the Chattanooga Police Department.

56. Defendant Chief Chambers is ultimately responsible for the discipline of officers as well as having the final say as to what discipline does or does not occur for officers at the Chattanooga Police Department.

57. Defendant City of Chattanooga and Defendant Chief Chambers is/are aware of a history and pattern of violent and unconstitutional police action at the Chattanooga Police Department, where officers of the Chattanooga Police Department engage in violent behavior that involve excessive force in violation of the Fourth Amendment, to wit:

   a. Chattanooga police officer, Sean Emmer, used excessive force on a citizen, leading to severe injuries to the citizen's legs;

9

Case 1:25-cv-00382-TRM-CHS   Document 1   Filed 12/19/25   Page 9 of 14   PageID #: 9

b.    Multiple Chattanooga Police Officers have been involved in Federal lawsuits stemming from the use of excessive force, many of which resulted in settlements;

c.    Multiple Chattanooga Police Officers have been involved in other incidents of excessive force against citizens.

58.    The ongoing pattern, custom, and policy of excessive force within the Chattanooga Police Department is so apparent that the department implemented further de-escalation training this year.

59.    Defendant City of Chattanooga endorses and/or implements and/or acquiesces in a long-standing and unwritten policy or custom of shielding officers from consequences for their application of violence and/or use of excessive force and/or ignoring the use of excessive force on citizens during arrests, to wit:

a.    For years prior to Decedent's death, Defendant City of Chattanooga and/or Defendant Chief Chambers acquiesced to a culture that accepts excessive force as a condition of police work at the Chattanooga Police Department, to the extent that officers are trained and aided on how to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

b.    For years prior to Decedent's death, Defendant City of Chattanooga and/or Defendant Chief Chambers perpetuated a culture of violence in the Chattanooga Police Department by abandoning its/his duty under the Constitution for the State of Tennessee to remove deputies and/or exercise control over the Chattanooga Police Department by allowing officers to restrict and/or interfere with and/or hamper the internal oversight activities of the Chattanooga Police Department;

c.    Prior to Decedent's death, Defendant City of Chattanooga and/or Defendant Chief Chambers allowed a Chattanooga police officer, Sean Emmer, to remain in his position without repercussions, despite being flagged multiple times by the department for previous complaints. This

allowed Officer Emmer to remain in the position to be able to, again, use excessive force on a citizen during an arrest, leading to severe injuries to the citizen's legs. It was only after this last incident did Defendant City of Chattanooga and/or Defendant Chief Chambers took corrective action.

60. The unwritten policy and/or customs stated herein is/are known to Defendant City of Chattanooga and/or Defendant Chief Chambers, who approved, benefitted from, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout the Chattanooga Police Department.

61. Following the death of Decedent, Defendant City of Chattanooga and/or Defendant Chief Chambers continue to approve, ratify, encourage, sanction, and/or promote the policy or custom of ignoring excessive force and fostering a culture of violence as he/they express support for Defendant Johnson's and/or Defendant Davis's actions regarding the death of Decedent, imposed no discipline on any of the above Defendants, and has changed none of the training at the Chattanooga Police Department.

62. To date, Defendant City of Chattanooga and/or Defendant Chief Chambers have never initiated any meaningful policy reviews or culture reforms regarding excessive force within the Chattanooga Police Department.

63. The aforesaid unwritten policies or customs put Decedent, Plaintiffs, and the general public at unreasonable risk of grievous bodily harm, injury, or death.

64. The aforesaid unwritten policies or customs as shown by the pattern of unreasonably violent conduct and events stated above (and reinforced by the lack of meaningful discipline) were "closely related" to the ultimate constitutional injury suffered by Decedent and/or Plaintiffs and/or were in fact a cause of the death of Decedent.

65. At all times relevant hereto, Defendant City of Chattanooga initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs.

66. Upon information and belief, Defendant Chief Chambers and others from the Chattanooga Police Department reviewed documents, discussed, and/or received details and

11

information at the Chattanooga Police about the manner in which officers deploy unreasonable force against citizens, including, without limitation, the manner in which Defendants Johnson and/or Davis shot and killed Decedent while he posed no immediate threat.

67. Upon information and belief, Defendant Chief Chambers and others from the Chattanooga Police Department were thus on actual and/or constructive notice of the aforesaid unconstitutional acts which form the unconstitutional policies or customs alleged herein - but did nothing about them.

### Objective Indifference - Failure to Train or Discipline

68. All preceding paragraphs are incorporated as if fully re-written herein.

69. Upon information and belief, Defendant City of Chattanooga and Chief Chambers do not adequately train regarding the use of force, to wit:

    a. Defendants did not train, promulgate and/or enforce a use of force policy at the APSO that trained deputies as to the appropriate level of force to use in the situation encountered by Defendants Johnson and Davis; and

    b. Defendants did not train, promulgate and/or enforce proper de-escalation techniques to use in the situation encountered by Defendants Johnson and Davis.

70. Upon information and belief, Defendant City of Chattanooga and Defendant Chief Chambers do not routinely discipline Chattanooga Police Department officers, such as Defendants Johnson and/or Davis, who use excessive force on citizens.

71. Upon information and belief, Defendant City of Chattanooga and Defendant Chief Chambers do not discipline Chattanooga Police Department officers, such as Defendants Johnson and/or Davis who fail to de-escalate situations where persons, like Decedent, are posing no immediate threat.

72. The failure to adequately discipline and/or train Defendants Johnson and/or Davis is well documented, where Defendant Marino has been at the center of several incidents of misconduct,

but still allowed to maintain his position and/or continue his duties without material consequence.

73. The need for said training and discipline, including termination from employment, as aforesaid, is so obvious that the failure of Defendants to conduct said training and discipline establishes Defendants' objective deliberate indifference to the constitutional rights of Plaintiffs and Decedent and all who live in the City of Chattanooga.

74. As a direct and proximate result of Defendants' acts or failures to act and/or written and/or unwritten policies or customs and failure to train and discipline as aforesaid: Decedent Zayas was shot and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiffs' family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants, jointly and severally, for not less than $1,000,000.00, including but not limited to:

A. Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B. Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C. Equitable relief, including that Defendant Canton be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

D. Attorneys' fees and all costs associated with this action; and

E. Any and all other relief that this Court deems equitable, just and proper.

## VII. JURY DEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

Respectfully submitted,

/s/ James R. Kennamer
G. Brent Burks (TN 016615)
James R. Kennamer (TN 016172)
**McMahan Law Firm**
P.O. Box 11107
Chattanooga, TN 37401
Tel: 423-265-1100
Fax: 423/756-8120
brent@mcmahanlawfirm.com
jay@mcmahanlawfirm.com


Robert F. DiCello (0072020)
Joseph T. Frate (0101377)
Jordyn A. Parks (00102573)
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.: 440-953-8888
rfdicello@dicellolevitt.com
jfrate@dicellolevitt.com
jparks@dicellolevitt.com

*Counsel for Plaintiff*