IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| LORRAINE SCHEURER, individually and as | : | |
| Administratrix of the Estate of ROBERTO | : | |
| RODRIGUEZ ZAYAS, Deceased; SONIA | : | |
| ZAYAS, in her Individual capacity wrongful death | : | |
| Beneficiary of ROBERTO RODRIGUEZ ZAYAS, | : | |
| Deceased; LORRAINE SCHEURER, as next friend | : | |
| And mother of M.Z., a minor in his individual | : | |
| Capacity as wrongful death beneficiary of | : | NO. 1:25-CV-00382 |
| ROBERTO RODRIGUEZ ZAYAS, Deceased. | : | |
| | : | |
| Plaintiffs, | : | JUDGE TRAVIS R. McDONOUGH |
| | : | CHRISTOPHER H. STEGER |
| | : | |
| vs. | : | |
| | : | |
| CITY OF CHATTANOOGA, TENNESSEE; | : | |
| OFFICER DYLAN JOHNSTON; OFFICER | : | |
| LEWIS DAVIS; JOHN CHAMBERS, CHIEF OF | : | |
| POLICE, | : | |
| | : | |
| Defendants. | : | |

## ANSWER OF DEFENDANTS CITY OF CHATTANOOGA, TENNESSEE, OFFICER DYLAN JOHNSTON, OFFICER LEWIS DAVIS AND CHIEF OF POLICE JOHN CHAMBERS

COME the Defendants, City of Chattanooga ("City"), a governmental entity as defined by

the Tennessee Governmental Tort Liability Act at Tenn. Code Ann. §§ 29-20-101 *et seq*. and

pursuant to its legal requirements under *Monell v. Department of Social Services of City of New*

*York, 436 U.S. 658 (1978)* and its case law, and Officer Dylan Johnston, Officer Lewis Davis, and

Chief of Police John Chambers, in their individual and official capacities as Chattanooga Police

Officers (collectively "City Defendants" and/or "City officers" in their individual and/or official

capacities), and for their answer to the Complaint filed against them, would state as follows:

**FIRST DEFENSE**

The Complaint fails to state a claim against the City and the individual officers named in the complaint upon which relief may be granted.

**SECOND DEFENSE**

For answer to the specific allegations contained in the numbered paragraphs of the Complaint, City Defendants would state as follows:

1.      City Defendants are without sufficient information to admit or deny the allegations contained in Paragraph 1 of the Complaint. As such, all statements and allegations in Paragraph 1 are denied and strict proof is herein demanded.

2.      City Defendants admit, in part, and deny in part the allegations contained in Paragraph 2 of the Complaint. More specifically, all City Defendants admit that the Plaintiffs seek damages pursuant to 42 U.S.C. §1983. All City Defendants deny that there are any valid claims for deprivation or violation of Decedent Zayas's clearly established rights under the Fourth or Fourteenth Amendments to the United States Constitution based on the actions of any City officers or that there are any valid claims that the City or its policymakers adopted or allowed any unconstitutional policies, customs, or practices which resulted in any improper use of deadly force against the decedent, Roberto Rodriguez Zayas as set forth in Paragraph 2 of the Complaint. The remainder of the allegations contained in Paragraph 2 of the Complaint are expressly denied and strict proof is herein demanded.

3.      City Defendants admit, in part, and deny, in part, the allegations contained in Paragraph 3 of the Complaint. More specifically, City Defendants admit that the Court has jurisdiction to hear this Complaint based on allegations of constitutional violations under the Fourth Amendment. However, to the extent that Paragraph 3 of the Complaint alleges any wrong-

doing on the part of the City Defendants, or the violations of any constitutional right based on the facts and circumstances set forth in this complain such allegations are denied and strict proof is herein demanded.

4.     City Defendants admit the allegations regarding venue contained in Paragraph 4 of the Complaint.

5.     City Defendants are without sufficient information to admit or deny the allegations regarding Plaintiff Lorraine Scheurer contained in Paragraph 5 of the Complaint.

6.     City Defendants are without sufficient information to admit or deny the allegations regarding Plaintiff Lorraine Scheurer contained in Paragraph 6 of the Complaint. Strict proof is herein demanded.

7.     City Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8.     City Defendants admit the allegations contained in Paragraph 8 of the Complaint.

9.     City Defendants admit the allegations as to Defendant Johnston contained in Paragraph 9 of the Complaint.

10.     City Defendants admit the allegations as to Defendant Davis contained in Paragraph 10 of the Complaint.

11.     City Defendants admit the allegations as to Defendant John Chambers as a policymaker for the City of Chattanooga contained in Paragraph 11 of the Complaint.

12.     City Defendants admit in part, and deny, in part, the allegations as to all Defendants contained in Paragraph 12 of the Complaint. City Defendants admit that City Officers Davis and Johnston were acting under color of law and pursuant to the policies, customs and practices of the City of Chattanooga on December 24, 2024. City Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint, and strict proof is herein demanded.

13.     Paragraph 13 of the Complaint requires no additional response from City Defendants.

14.     City Defendants have insufficient information to admit all the allegations contained in Paragraph 14 of the Complaint but admit that Roberto Rodriguez Zayas was encountered by City Officer Defendants at approximately 12:22pm on December 24, 2024. These officers were dispatched to the scene after receiving reports that Zayas stole a knife from the Waffle House in the 7800 block of East Brainerd Road and began cutting himself. Strict proof of any other allegations in Paragraph 14 is demanded.

15.     City Defendants are without sufficient information to admit or deny the allegations of any military history or mental health information contained in Paragraph 15 of the Complaint. Strict proof is herein demanded.

16.     City Defendants admit that officers were dispatched to the scene on December 24, 2024, due to the actions of Roberto Rodriguez Zayas after he entered the Waffle House as set forth in the allegations contained in Paragraph 16 of the Complaint.

17.     City Defendants admit that officers were dispatched to the scene on December 24, 2024 due to the actions of Roberto Rodriguez Zayas after he entered the Waffle House, stole a steak knife and began cutting his arms and neck in that location causing concern to the patrons. It is admitted that Roberto Rodriguez Zayas began harming himself in that matter as set forth in the allegations contained in Paragraph 17 of the Complaint.

18.     The allegations in Paragraph 18 are denied as stated. City Defendants admit that a call came through Hamilton County 911 by patrons present in the Waffle House who observed the actions of Mr. Zaya and who stated that Mr. Zayas was harming himself. However, there was no information available as to Mr. Zayas state of mind prior to the City officers arriving on scene.

19.     The allegations in Paragraph 19 are denied. City Defendants, admit that both Defendant Davis and Defendant Johnston received multiple calls that Mr. Zayas continued down East Brainerd Road cutting himself on both arms and his neck and eventually went into a wooded area near a Chattanooga Fire Station on East Brainerd Road.

20.     City Defendants admit Defendant Davis initially followed Mr. Zayas into the wooded area and Defendant Johnston came after Defendant Davis into the wooded area after they were dispatched to the scene as an effort to attempt to stop Mr. Zayas from harming himself. The remaining allegations contained in Paragraph 20 of the Complaint are denied, and strict proof is herein demanded.

21.     City Defendants admit the allegations as contained in Paragraph 21 of the Complaint. Proof will show that Mr. Zayas continued to harm himself and continued cutting his wrists and neck in the woods in the presence of both officers. The officers sought to calm him down by communicating and eventually both officers using less than lethal force due to their concerns for his safety while he continued to harm himself with the knife.

22.     City Defendants admit in part the allegations contained in Paragraph 22 of the Complaint, Defendant Davis told Mr. Zayas, "put the knife down" over two dozen times, also Defendant Davis asked decedent to stop running, says that he just wants to talk to him, requested for him to sit down, and told Mr. Zayas "we can just talk through this" in multiple attempts to de-escalate the dangerous harm to himself that Mr. Zayas continued in the woods. Defendant Johnston also made statements in an attempt to calm the actions by Mr. Zayas.

23.     City Defendants admit in part, the allegations contained in Paragraph 23 of the Complaint. Video evidence will establish that Defendant Davis arrived first and was alone with

decedent for approximately a minute and a half before Defendant Johnston arrived to back him up at the scene and attempted to stop Mr. Zayas from continuing to cut himself with the steak knife.

24.     City Defendants admit that Mr. Zayas was harming himself with the steak knife despite multiple attempts to calm him verbally by both officers as alleged in Paragraph 24.

25.     City Defendants deny the allegations in Paragraph 25 of the Complaint, and strict proof is herein demanded. It will be established by video evidence that Mr. Zayas approached the officers with the knife presented towards the officers which was a deadly threat to both officers after less than lethal force was not effective to eventually stop the actions of Mr. Zayas.

26.     City Defendants admit the allegations in Paragraph 26 of the Complaint that Defendants Johnston and Davis eventually deployed tasers to stop the decedent from continuing to harm himself and preventing others from getting him medical attention.  City Defendants would further state that prior to Defendants Johnston and Davis tasing the decedent, the decedent charged the officers.

27.     City Defendants admit the allegations in Paragraph 27 of the Complaint 0that Mr. Zayas continued to harm and cut himself with the steak knife even after two different sets tasers were deployed with up to four electronic bursts that were not effective due to his medications and clothing. City Defendants will establish that Mr. Zayas eventually approached both of the officers with the knife causing both officers to fear for their lives and the safety of others before they utilized their service weapons as a last resort. .

28.     City Defendants Johnston and Davis admit that they were forced to employ deadly force by using their service weapons after multiple attempts of tasers were ineffective and Mr. Zayas approached them with the steak knife outstretched and pointed at them. City Defendants Johnston and Davis have insufficient information to admit or deny the number of exact bullets

fired from their service weapons towards Mr. Zayas; and it is denied that both officers fired eleven bullets into Decedent's body, and strict proof thereof is herein demanded.

29.     City Defendants specifically deny the allegations contained in Paragraph 29 that Decedent Zayas was non-aggressive directly before deadly force was employed by Defendants Davis and Johnston and strict proof is herein demanded. All City Defendants specifically deny that decedent was not attempting to harm anyone other than himself and that he was not indicating he was going to use the knife on the Defendant Officer. City Defendants would submit that the decedent approached both officers in an aggressive manner and would not stop after multiple commands to do so. City denies the remainder of the allegations in paragraph 29 of the Complaint and demands strict proof thereof in the trial of this cause

30.     City Defendants deny the allegations contained in paragraph 30 of the Complaint and strict proof is demanded herein. City Defendants Davis and Johnston deny that there was no aggressive action by Mr. Zayas directly before both Defendants employed deadly force for the safety of themselves and others. City Defendants further deny there was time to plan a life preserving strategy without cooperation from the decedent although other responders were close by for medical attention once the threat to officer safety was over. City Defendants Davis and Johnston would also state that immediate first aid was applied once the decedent was stopped. City Defendants deny that backup was not called during this rapidly evolving incident. City Defendants Davis and Johnston deny that they did not attempt to and make every possible effort to de-escalate and/or attempt to talk with the Decedent using critical incident training that they had received during their training. City Defendants Davis and Johnston would state that the incident was rapidly evolving and their attempts to de-escalate were not successful due to the actions of decedent Zayas.

31.     City Defendants admit the allegations in Paragraph 31 of the Complaint.

32.     All City Defendants categorically deny the allegations in Paragraph 32 of the Complaint, and strict proof is herein demanded. This Paragraph 32 contains a reference to a person unknown to have been present during this incident. It is unclear who decedent Fornash is, but it is similarly denied that this person was present or involved in this incident by all defendants.

COUNT I

42 U.S.C. §1983- Excessive Force in Violation of the Fourth Amendment (Against Defendants Johnston and Davis)

33.     City Defendants Davis and Johnston incorporate their responses to all preceding paragraphs as if fully re-written herein.

34.     City Defendants Davis and Johnston submit that no response is necessary to Paragraph 34 of the Complaint as it is a statement of law that speaks for itself.

35.     City Defendants aver no response is necessary to Paragraph 35 of the Complaint and would further state that 42 U.S.C. §1983 is a statement of law that speaks for itself.

36.     City Defendants aver no response is necessary to Paragraph 36 of the Complaint, as the Fourth Amendment to the United States Constitution is a statement of law that speaks for itself.

37.     City Defendants aver no response is necessary to Paragraph 37 of the Complaint because it is a statement of law, but to the extent that this Paragraph alleges or implies that the decedent was not posing any immediate threat to the officers or others, all City Defendants deny that Zayas was unarmed without a deadly weapon.

38.     City Defendants Johnston and Davis deny the allegations in Paragraph 38 of the Complaint that any of their actions towards the Decedent Zayas were excessive under the Fourth Amendment or otherwise, and strict proof is demanded herein.

39.    City Defendants Johnston and Davis deny the allegations in Paragraph 39 of the Complaint and would deny that decedent Zayas posed no threat of harm to them or others at the scene, and strict proof is herein demanded.

40.    City Defendants Johnston and Davis admit they were permitted to use the amount of force necessary under the circumstances to arrest and/or detain the decedent based on his actions at the scene. To the extent that the allegations in Paragraph 40 allege any wrongdoing of City Defendants Johnston and Davis on December 24, 2024, such allegations are denied and strict proof is herein demanded.

41.    City Defendants Johnston and Davis deny the allegations in Paragraph 41 of the Complaint that they misused their authority as police officers, and strict proof is demanded herein.

42.    City Defendants Davis and Johnston deny each of the subparagraph (a)–(c) allegations alleging that they used excessive force contained in Paragraph 42 of the Complaint, and strict proof is demanded herein. It is specifically denied that Mr. Zayas posed no threat of death or serious bodily injury to either Officers Johnston or Davis or others as he approached them and it will be established that Mr. Zayas was holding the knife forward after he was tased and moving towards both Officers before deadly force was used by the Officers.

43.    City Defendants Johnston and Davis deny the allegations in Paragraph 43 of the Complaint that their use of force was objectively unreasonable, and strict proof is herein demanded.

44.    City Defendants Johnston and Davis deny the allegations in Paragraph 44 of the Complaint, and strict proof is herein demanded.

45.    City Defendants Johnston and Davis deny all of the allegations in Paragraph 45 of the Complaint, and strict proof is herein demanded. It is specifically denied that any of the actions

by Defendants Johnston and Davis were gratuitous or excessive force, or based on any deliberate indifference by either Defendants, Johnston and Davis, to Decedent Zayas' constitutional rights under the Fourth or Fourteenth Amendments.

46.     City Defendants Johnston and Davis are without sufficient information to admit or deny any of the allegations contained in Paragraph 46 of the Complaint based on any actions or statements by the Decedent Zayas during their interactions with him on December 24, 2024. As such, all such allegations are denied and strict proof is herein demanded.

COUNT II

Municipal Liability pursuant to <em>Monell</em><br>(Against Defendant City of Chattanooga, Tennessee and Defendant Chief Chambers)

47.     The City and Defendant Chambers incorporate their responses applicable to them or other defendants to all preceding Paragraphs as if fully re-written herein.

48.     The City and Defendant Chambers aver no response is necessary to Paragraph 48 of the Complaint as it is a statement of law and it speaks for itself.

49.     The City and Defendant Chambers aver no response is necessary to Paragraph 49 of the Complaint, as the statute and case law speaks for itself regarding any municipal liability under *Monell* and *42 U.S.C. § 1983*. The City and Defendant Chambers do, however, deny that they are liable under *Monell* for any policies, customs, or practices that involved deliberate indifference in the training or supervision of its officers before this incident occurred or during this incident on December 24, 2024, or afterwards, and strict proof is herein demanded.

50.     The City and Defendant Chambers aver no response is necessary to Paragraph 50 of the Complaint. The City and Defendant Chambers do, however, deny that they are liable under *Monell* for any policies, customs, or practices that involved deliberate indifference in the training

or supervision of its officers before this incident occurred or during this incident on December 24, 2024, or afterwards and strict proof is herein demanded.

51.     The City and Defendant Chambers aver no response is necessary to Paragraph 51 of the Complaint because there is no unconstitutional policy or custom adopted by the City or its policymakers that was "closely related" to any injury suffered by the Plaintiffs other than decedent Zayas' actions at the scene. To the extent that the Complaint alleges that the City has any unconstitutional policy or custom which caused the death of decedent Zayas, such allegations are denied, and strict proof is herein demanded

52.     The City and Defendant Chambers admit the allegations in Paragraph 52 of the Complaint but expressly denies that it has any unconstitutional unwritten policies or customs that resulted in any violations in this incident.

53.     The City and Defendant Chambers admit the allegations in Paragraph 53 of the Complaint that he has been a policymaker and supervisor during the time that Chief Chambers has been a police chief and policymaker for the City.

54.     The City and Defendant Chambers admit the allegations in Paragraph 54 of the Complaint that he has been responsible for adopting and enforcing policies during the time that Chief Chambers has been a police chief and policymaker to implement policies for the City.

55.     The City and Defendant Chambers admit the allegations in Paragraph 55 of the Complaint that he has to review discipline for police officers during the time that Chief Chambers has been Police Chief and responsible for assignment and training policies as Chief.

56.     The City and Defendant Chambers admit the allegations in Paragraph 56 of the Complaint that Chief Chambers has been responsible to review and impose the discipline of

officers in his chain of command at the Chattanooga Police Department during the time that Chief Chambers has been Chief.

57.     The City and Defendant Chambers deny all the allegations in Paragraph 57 of the Complaint and strict proof is demanded herein. City Defendants deny that there is any extensive history or pattern of violent and unconstitutional police action that has been authorized by any city policymakers. The City would state subparagraphs (a) through (c) contain vague references to former officers and settlements in other incidents which have no factual basis related to this case. City Defendants will establish that any other settlements of civil litigation are not an admission of any unconstitutional policy, custom, or practice by the City Defendants or its policy makers. The City would also state that although a Federal Lawsuit was filed against former Chattanooga Police Officer Sean Emmer in 2013 before Chief Chambers became Police Chief, that civil lawsuit was settled  without any admission or finding of wrongdoing of the City.

58.     The City and Defendant Chambers deny the allegations in Paragraph 58 of the Complaint regarding subsequent police training, and strict proof is herein demanded. Police officer training is provided annually to all officers in the department as required by Tennessee law.

59.     The City and Defendant Chambers deny the allegations in Paragraph 59 of the Complaint, and strict proof is herein demanded for all subparagraphs (a) through (c). Any statements in Paragraph 59 that policymakers have acquiesced to a culture of violence without internal oversight is expressly denied. All City Defendants would further state that any reference to any incident involving former Chattanooga Police Officer Sean Emmer in 2013 was not during a time where Chief Chambers was a City policymaker and is not based on similar facts or circumstances which make it irrelevant to this incident.

60.     The City and Defendant Chambers deny all allegations asserting any unwritten unconstitutional policy or customs in Paragraph 60 of the Complaint which were approved, ratified, encouraged, sanctioned, or promoted by any policymaker for the City, and strict proof is herein demanded.

61.     The City and Defendant Chambers deny all allegations in Paragraph 61 of the Complaint, and strict proof is herein demanded. City Defendants would state that no discipline was imposed after this incident by Chief Chambers on either Defendants Davis or Williams because it was determined by outside agencies and internal investigation within the police department that both officers acted reasonably under the circumstances and employed the appropriate amount of force in self-defense against decedent Zayas who was approaching them aggressively on body cam video with a steak knife out following the ineffective deployment of the taser devices utilized as nonlethal force.

62.     The City and Defendant Chambers deny all allegations in Paragraph 62 of the Complaint, and strict proof is demanded herein.  All City Defendants would state that Chattanooga Police Department policies are reviewed on an annual basis as required by Tennessee law and CALEA policy standards which are outside agencies that review police policies and training.

63.     The City and Defendant Chambers deny all allegations in Paragraph 63 of the Complaint regarding any unwritten unconstitutional policies or customs, and strict proof is demanded herein.

64.     The City and Defendant Chambers deny all allegations in paragraph 64 of the Complaint regarding any unwritten unconstitutional policies or customs which were "closely related" to any alleged constitutional injury suffered by Decedent and/or Plaintiffs, and strict proof is demanded herein.

65.     The City and Defendant Chambers deny all allegations in Paragraph 65 of the Complaint, and strict proof is demanded herein.

66.     The City and Defendant Chambers deny the allegations in Paragraph 66 of the Complaint as written. It is admitted that there was Internal Affairs review of this incident after the conclusion of the investigation by the District Attorney which found that the actions of both Officers Davis and Johnston were justified in the use of deadly force pursuant to T.C.A. § 39-11-620. Defendants City and Chambers will establish that similar review occurs in other incidents which involve use of force by officers to determine whether such force or officer use of force was within the written policies adopted by the Chief of Police at the time it occurred. It is expressly denied that Defendants Johnston or Davis shot and killed the decedent Zayas while he posed no immediate threat, and strict proof is herein demanded.

67.     The City and Defendant Chambers deny all allegations in Paragraph 67 of the Complaint concerning any actual or constructive notice that their officers committed unconstitutional acts and did nothing about them, and strict proof is herein demanded.

**Objective Indifference- Failure to Train or Discipline**

68.     The City and Defendant Chambers incorporate their responses to all preceding paragraphs as if fully re-written herein.

69.     The City and Defendant Chambers deny all allegations in Paragraph 69 of the Complaint and subparagraphs (a) and (b), and strict proof is herein demanded. This paragraph references APSO which is not involved in any training in this department. The City and Defendant Chambers would further state that the Chattanooga Police Department policies are all in alignment with CALEA policy standards and Tennessee state accreditation standards and Tennessee statutes.

It is expressly denied that de-escalation techniques were not properly trained to Chattanooga officers including Defendants Davis and Johnston before this incident.

70.     The City and Defendant Chambers deny all allegations in paragraph 70 of the Complaint, and strict proof is herein demanded.

71.     The City and Defendant Chambers deny the allegations in paragraph 71 of the Complaint, and strict proof is herein demanded. The City and Defendant Chambers would submit that Defendants Johnston and/or Davis took reasonable steps to de-escalate the situation based on critical incident training that they received before this incident. The City and Defendant Chambers further state that decedent Zayas posed an immediate safety threat to Officers Davis and Johnston after non-lethal force was ineffective and they were in fear of bodily harm when they utilized deadly force in accordance with city policy.

72.     The City and Defendant Chambers deny all allegations in Paragraph 72 of the Complaint, and strict proof is herein demanded. The City and Defendant Chambers further would state there is no Defendant Marino who was employed by the City on December 24, 2024 or named in this lawsuit..

73.     The City and Defendant Chambers deny the allegations in Paragraph 73 of the Complaint that the City inadequately trained or disciplined its officers due to any deliberate indifference to the constitutional rights of others, and strict proof is herein demanded.

74.     The City and Defendant Chambers deny all allegations in Paragraph 74 of the Complaint, and strict proof is herein demanded. The City and Defendant Chambers would further state that the decedent, Mr. Zayas' aggressive actions were a threat and both of the officers on scene attempted to de-escalate the rapidly evolving situation before using deadly force for the safety of themselves and others at the scene. All allegations of damages referenced in Paragraph

74 occurred due to the actions of the decedent, Mr. Zayas and not as a result of any failures to train or discipline Defendants Davis or Johnston by the City or Chief Chambers when they appropriately used necessary force.

75.     The City and Defendant Chambers deny that Plaintiff/s are entitled to any relief that they seek in their Prayer for Relief in Section VI of the Complaint for damages sought jointly and severally against these four named Defendants or any others. It is expressly denied that Plaintiffs are entitled to any compensatory, consequential, punitive damages, equitable relief, and attorneys' fees and costs in connection with the filing of this complaint included in subparagraphs (A) through (E).

76.     Any other allegations in the Complaint not heretofore admitted, explained, or denied are hereby specifically denied, and all the City Defendants demand strict proof.

## THIRD DEFENSE

City Defendants specifically assert all defenses applicable to them under the Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. §§ 29-20-101 *et seq.*, for any state law claims express or implied in the Complaint and incorporate by reference herein all defenses specified therein. In particular, these Defendants rely upon the following provisions:

A.     T.C.A. § 29-20-205 sets out nine (9) specific exceptions from liability where negligent acts or omissions of any employee occur within the scope of employment, including, but not limited to:

i.     T.C.A. § 29-20-205(1): The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

      ii.      T.C.A. § 29-20-205(2): False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.

B.      T.C.A. § 29-20-307 provides for the right to trial without a jury; and

C.      T.C.A. § 29-20-403 limits any liability of governmental entities to the statutory limits of liability applicable as of the date of the incident giving rise to this action.

## FOURTH DEFENSE

All City Defendants deny that they violated Mr. Zayas' constitutional rights or that the City or any of its employees violated the Fourth Amendment or Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§1983 in any actions taken toward the decedent, Mr. Zayas which may result in any recovery of damages by any Plaintiff.

## FIFTH DEFENSE

City Defendants assert that immunity is preserved for governmental entities unless a specific exception under the TGTLA removes immunity. *See Kirby v. Macon County*, 892 S.W.2d 403 (Tenn. 1994).

## SIXTH DEFENSE

City Defendants are immune from liability and are not proper parties under the TGTLA for any negligent act or omission for which the immunity of the governmental entity is not removed by the TGTLA.

## SEVENTH DEFENSE

The City and Defendant Chambers deny that any claim by the Plaintiffs have occurred as a result of any unconstitutional policy, custom or practice adopted by any official policymaker of

the City. The City and Defendant Chambers would assert that the City is entitled to sovereign immunity from any liability based upon certain intentional torts and/or any negligence claims of its employees based upon the specific torts enumerated within T.C.A. § 29-20-205(2).

## EIGHTH DEFENSE

The City and Defendant Chambers would show that no actions of Defendants Johnston or Davis or any other officers occurred as a result of any unconstitutional policy, custom, or practice adopted by the City. The City and Defendant Chambers will establish that all training policies on use of force and critical incident training was properly provided to officers before this incident occurred on December 24, 2024, based on Tennessee and CALEA training standards which were adopted by its policymakers.

## NINTH DEFENSE

The City and Defendant Chambers state that they cannot be held liable for any damages asserted by the Plaintiffs claimed on the grounds that any alleged injuries sustained by the Plaintiffs were not proximately caused by or directly related to any unconstitutional policy, custom or practice of the City adopted by Chief Chambers as policymaker for the City. The City would further specifically assert that it cannot be held liable for the actions of its employees under 42 U.S.C. § 1983 on the basis of *respondeat superior*.

## TENTH DEFENSE

City Defendants, including Defendants Johnston and Davis would assert that no tort claim may be brought against any City employees or judgment entered against City employees for any injury proximately caused by any negligent act or omission of an employee within the scope of employee's employment in any amount in excess of the limits established for governmental entities at T.C.A. § 29-20-403 pursuant to the provisions of T.C.A. § 29-20-310(c).

**ELEVENTH DEFENSE**

City and Defendant Chambers will show that they were not deliberately indifferent to the decedent Mr. Zayas, the Plaintiffs, or other citizens in providing any training or supervision of its officers prior to this incident. All City Defendants will establish that the actions of Mr. Zayas in engaging in self-destructive acts and harming himself by cutting his wrists, and neck, while under the influence of drugs resulted in the proximate cause of his death.

**TWELFTH DEFENSE**

All City Defendants would submit that the City and its officer defendants cannot be subject to punitive damages in this case as a matter of law based on their actions in an attempt to stop Mr. Zayas from his self-destructive actions with a knife which he continued to use on himself and threatened to use on officers after less than lethal efforts to stop his self-destructive actions failed while he was under the influence of drugs.

**THIRTEENTH DEFENSE**

The City and Chief Chambers will establish that it properly trained and supervised its employees above and beyond the standards required under Tennessee law based upon clear actions of its policymakers prior to December 24, 2024, in the use of deadly force and the use of less than lethal force by Taser weapons which were issued to officers. The City will establish that there was no negligent training or supervision of its officers on or before December 24, 2024, which proximately caused any injury or damages to the decedent Mr. Zayas or any of the plaintiffs. The training and supervision of officers by the City and its policymakers was objectively reasonable and met objectively reasonable standards.

## FOURTEENTH DEFENSE

The City will show that Plaintiffs have suffered no damages other than those damages which were caused by the express actions of Mr. Zayas due to his consumption of mind altering drugs and suicidal acts when he stabbed himself in the neck and throat while officers commanded him to stop and utilized less than lethal force initially to avoid the use of deadly force in this encounter.

## FIFTEENTH DEFENSE

City Defendants will show that there is no proximate causation between any alleged injury of Plaintiffs and any alleged negligent or intentional acts of the officers at the scene or any policymakers of the City who provided any training or supervision of the officers in the policies or practices of the City.

## SIXTEENTH DEFENSE

All City Police Officer Defendants submit that they enjoy qualified immunity for certain actions in their eventual decision to use deadly force as police officers of the City. Defendants Johnston, Lewis, and Chambers were properly acting at all relevant times as city employees pursuant to duly enacted laws of the City and State of Tennessee.

## SEVENTEENTH DEFENSE

City Defendants assert their intent to seek reimbursement for attorneys' fees and costs as to state law claims made against its officers as a prevailing party, having been sued in their individual capacities for actions taken in their official capacities and under color of law, pursuant to *Tenn. Code Ann. §29-20-113(d)*. Attorney fees for Defendants shall be calculated at a reasonable rate paid to attorneys of similar experience in private practice as authorized under *Tenn. Code Ann. §29-20-113(d)*.

## EIGHTEENTH DEFENSE

City Defendants Chambers, Lewis, and Johnston are immune from liability and are not proper parties under the Tennessee Governmental Tort Liability Act (TGTLA) for any state law act or omission for which the immunity of the governmental entity is removed by the TGTLA.

## NINETEENTH DEFENSE

The City reserves the right to assert any additional defenses which their investigation or discovery reveals may apply to bar in whole or in part any of Plaintiff's claims.

WHEREFORE, all City Defendants pray that Plaintiffs' Complaint be dismissed with prejudice with costs taxed to Plaintiffs and that the Court grant City Defendants such further relief as the Court deems appropriate pursuant to 42 U.S.C § 1988 and/or *Tennessee Code Ann.* § 29-20-113.

Respectfully submitted,

CITY OF CHATTANOOGA, TENNESSEE
OFFICE OF THE CITY ATTORNEY


By:＿＿＿s/ Kathryn C. McDonald＿＿＿＿＿＿＿＿
        KATHRYN C. McDONALD – BPR #30950
        CHRISTOPHER L. McKNIGHT - BPR #34351
        *Assistant City Attorneys*
        PHILLIP A. NOBLETT – BPR #10074
        *City Attorney*
        100 E. 11th Street, Suite 200
        Chattanooga, TN  37402
        (423) 643-8250 – Telephone
        (423) 643-8255 – Facsimile

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic mail and/or regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

G. Brent Burks
James R. Kennamer
THE McMAHAN LAW FIRM
P.O. Box 11107
Chattanooga, TN  37401

Robert F. DiCello
Joseph T. Frate
Jordyn A. Parks
DiCELLO LEVITT LLP
8160 Norton Parkway, Third Floor
Mentor, OH  44060

This 20th day of January, 2026.

_____
s/ Kathryn C. McDonald